UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTUAN MUNGO MARTINEZ (A# 241-865-637),

Petitioner,

v.

WARDEN, CALIFORNIA CITY CORRECTIONAL CENTER,

Respondent.

No.  1:26-cv-02642 DC SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  District Judge Coggins referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  ECF No. 8.

**FACTUAL AND PROCEDURAL HISTORY**

Petitioner, a native and citizen of Cuba, entered the United States without inspection on August 4, 2022.  ECF No. 1 at 4.  Customs and Border Protection agents apprehended Petitioner and released him on an order of recognizance (Form I-220A).  Id.; ECF No. 7-1 at 2.

On November 7, 2025, officials with the Marion County (Florida) Sheriff's Office arrested Petitioner at his home on three charges: (1) dealing in stolen property, Fla. Stat. § 812.019(2); (2) grand theft (third degree), Fla. Stat. § 812.014(2)(c)(1); (3) false verification of ownership to pawnbroker, Fla. Stat. § 539.001(8)(b).  ECF No. 7-3 at 4-5.  Petitioner states that

1

he was transferred to the custody of Immigration and Customs Enforcement ("ICE") the same day. ECF No. 1 at 1. He is currently detained in the California City Correctional Center, within this judicial district. Id. at 3. He alleges his health has deteriorated in detention and that he has "constant and severe flu-like symptoms" and episodes on coughing up blood. Id. at 6, ¶ 12.

On April 3, 2026, an immigration judge ("IJ") determined Petitioner was subject to 8 U.S.C. § 1225(b)(2) based on his apprehension at the border and denied Petitioner's request for a custody re-determination hearing for lack of jurisdiction. ECF No. 1 at 70. The IJ added that, assuming arguendo that Petitioner was a member of the Maldonado Bautista "Bond Eligible Class," the Ninth Circuit's stayed that judgement as to noncitizens like Petitioner detained outside of the Central District of California. Id. at 71.

Petitioner filed the instant § 2241 petition on April 8, 2026. Petitioner alleges that he falls squarely under 8 U.S.C. § 1226(a) given his four-year presence in the United States, but is being denied bond in violation of the Immigration and Nationality Act ("INA") (Count 1) and the Due Process Clause of the Fifth Amendment (detention "without . . . constitutionally adequate bond hearing," Count 2). ECF No. 1 at 8. Plaintiff also raises a claim for Unconstitutional Punitive Detention (Count 3), Inadequate Medical Care (Count 4), and Unlawful Transfer and Violation of the Right to Family Association (Count 5). Id. at 8-9. By way of relief, Petitioner seeks immediate release and a declaration that his detention is governed by 8 U.S.C. § 1226(a). In the alternative, he requests a bond hearing before an IJ at which the government bears the burden of establishing danger or flight risk by clear and convincing evidence. Id. 10.

Respondent answered the petition and counters that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E), as amended by the Laken Riley Act ("LRA"), on account of his "conviction" for grand theft.[1] ECF No. 7 at 3-5. Regarding the petition's core challenge to Petitioner's ongoing detention without bond, Respondent argues that the Supreme Court upheld the constitutionality of mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510, 531 (2003), and that Petitioner's individual detention passes constitutional muster under

---

[1] As explained below, it does not appear that Petitioner has actually been convicted of grand theft.

2

any of the tests used by district courts within this Circuit. Id. at 5-6. Finally, Respondent disputes Petitioner's final three claims that his detention is punitive, that he has received inadequate medical care, or that his transfers, if any, were unlawful. Id. at 6-7.

Petitioner filed a motion for temporary restraining order ("TRO") along with his § 2241 petition that similarly asserts he is wrongfully detained under § 1225(b) and subjected to punitive detention. ECF No. 2. On May 4, 2026, District Judge Coggins denied Petitioner's TRO motion via minute order:

> In Respondents' Opposition to Petitioner' Motion for a Temporary Restraining Order, Respondents differentiate Petitioner's case from those cited in the court' Order by arguing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). Specifically, Respondents assert that Petitioner was detained by immigration authorities following his conviction for grand theft in violation of Florida Statutes § 812.014, and he is therefore mandatorily detained under 8 U.S.C. § 1226(c)(1)(E), which subjects noncitizens charged with, arrested for, or convicted of certain acts, including theft, larceny, and shoplifting, to mandatory detention. (See Doc. No. 7 at 2.) Respondents attach Petitioner's [7-3] FBI RAP sheet reflecting this conviction. The Supreme Court has found mandatory detention without a bond hearing under 8 U.S.C. § 1226(c) to be constitutional. See Demore v. Kim, 538 U.S. 510, 531 (2003). Petitioner did not file a reply contesting Respondents' allegation, and his time to do so has expired. (See Doc. No. 5.) Thus, the court finds that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), and he is not entitled to release or a bond hearing under that statute at this juncture.

ECF No. 8. District Judge Coggins then referred the matter to the undersigned for further proceedings. Id.

## APPLICABLE DETENTION STATUTE

The statutory scheme for immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Petitioner asserts he is eligible for bond under 8 U.S.C. § 1226(a), whereas Respondent maintains Petitioner is subject to mandatory detention under § 1226(c)(1)(E), as amended by the LRA. Congress enacted the LRA in January 2025, expanding mandatory detention to include anyone who (1) is inadmissible

3

pursuant to paragraph (6)(A), (6)(C), or (7) of 8 U.S.C. § 1182(a); and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" See Pub. L. No. 119–1, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)(1)(E)).

Neither the record nor the posture of Petitioner's detention has materially changed since Judge Coggins' TRO denial. The LRA's first statutory condition is met because immigration officials charged Petitioner as inadmissible under § 1182(a)(6)(A)(i). ECF No. 7-1 at 2 (Form I-213). Despite Respondent's insistence on a grand theft conviction, the undersigned finds no evidence of a conviction in the FBI Rap Sheet or elsewhere in the record.[2] Nevertheless, given Petitioner's undisputed November 2025 *arrest* for grand theft under Fla. Stat. § 812.014(2)(c)(1), the undersigned still finds that Petitioner is subject to § 1226(c)(1)(E). See Rozo Morales v. Warden, No. 2:26-CV-01253 DAD SCR (HC), 2026 WL 1146999, at *2 (E.D. Cal. Apr. 28, 2026) (holding that the petitioner's "grand theft conviction [under § 812.014] plainly falls within the ambit of § 1226(c)[(1)(E)]" and collecting cases); Soto v. Warden of Golden State Annex Det. Facility, No. 1:26-CV-0893 DAD CSK, 2026 WL 1179737, at *3 (E.D. Cal. Apr. 30, 2026) (concluding § 1226(c)(1)(E) applied to petitioner's arrest under Fla. Stat. § 812.014(2)(c)(1)).

Having determined that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(E), the undersigned finds that Petitioner is not entitled to relief on his INA claim (Count 1) premised on § 1226(a) as the applicable detention statute. The undersigned will turn next to Petitioner's remaining four claims.

////

////

////

---

[2] The FBI Rap Sheet reflects Petitioner's November 7, 2026, arrest and charges but does not indicate a conviction. ECF No. 7-3 at 4-5. Respondent also submitted an undated and unsigned from from Marion County Circuit Court reflecting a judgment on Petitioner's grand theft and false verification of ownership claims, but the order has an "unofficial' watermark and does not indicate a plea or other outcome. ECF No. 7-4. Thus, while Petitioner may have a grand theft conviction in his past, the undersigned cannot draw that conclusion from this record.

**DISCUSSION**

**I.      Procedural Due Process (Count 2)**

   **A.  As-Applied Framework**

The undersigned construes Petitioner's Count 2, which challenges his then-five-month-long detention "without a constitutionally adequate bond hearing," as raising an as-applied, procedural due process challenge.  See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (courts must "construe *pro se* habeas petitions liberally").  At this point, Petitioner has been detained for over seven months.  During this time, he has not received a bond hearing to determine whether his detention is justified based on dangerousness or flight risk.

The Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore, 538 U.S. at 531.  However, the Supreme Court did so with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal."  Id. at 513, 529 n.12, 530.  Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).  Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges:  "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."  Preap, 586 U.S. at 420.

The Ninth Circuit Court of Appeal has expressly declined to address "[w]hether due process requires a bond hearing" in such situations.  Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024).  However, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional."  Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018).  Other

5

Circuit Courts of Appeal have concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c). The Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024). The undersigned finds these authorities persuasive and agrees that Demore does not bar an as-applied challenge to prolonged detention without a hearing to determine whether such detention is justified. The next step is to determine the appropriate framework in which to analyze petitioner's procedural due process argument.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

The undersigned has considered the various tests developed by district courts within the Ninth Circuit, and finds that Mathews v. Eldridge, 424 U.S. 319 (1976), provides the appropriate test for due process challenges to prolonged detention under § 1226(c). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

////

////

### B. <u>Mathews</u> Factors

#### i. Private Interest

An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." <u>Singh v. Holder</u>, 638 F.3d 1196, 1208 (9th Cir. 2011). Courts of Appeal have generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged. <u>See German Santos v. Warden Pike Cty. Correctional Facility</u>, 965 F.3d 203, 211 3d Cir. 2020); <u>Black</u>, 103 F.4th at 150; <u>Reid v. Donelan</u>, 17 F.4th 1, 7–9 (1st Cir. 2021). While the Ninth Circuit has not addressed this question, it has previously referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1207 (2022) (citations omitted). Other courts within this Circuit have found due process violations where the length of mandatory detention without bond was similar to the length of detention at issue here. <u>See</u>, <u>e.g.</u>, <u>Chen v. Aitken</u>, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in <u>Demore</u>" and "neither release nor removal are imminent[.]").

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention. <u>See Lopez v. Garland</u>, 631 F. Supp. 3d 870, 880-81 (E.D. Cal. 2022) (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing). In this case, Petitioner has an individual hearing before an IJ scheduled for June 30, 2026.[3] But a final merits hearing before an IJ is not the end of Petitioner's removal proceedings. Either party may choose to appeal the IJ's removal order to the Board of Immigration Appeals and Petitioner could ultimately seek review by the Ninth Circuit Court of Appeals. Therefore, based on its duration to date without bond and the likelihood of continued mandatory detention during all phases of removal proceedings, the

---

[3] The undersigned takes judicial notice of Petitioner's EOIR Case Information Page, https://acis.eoir.justice.gov/en/caseInformation. <u>See</u> Fed. R. Evid. 201(b)-(c) (Courts "may take judicial notice on its own" of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

undersigned finds Petitioner's detention is sufficiently "prolonged" and confers a substantial private interest.

### ii.   Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335.  This factor firmly favors Petitioner.  "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds).  Indeed, "[i]n the absence of any meaningful initial procedural safeguards, it appears to us that almost any additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)).  Additional procedures are likely to be particularly meaningful given the purported flight and danger mitigation evidence that Petitioner submitted to the IJ ahead of his April 2026 hearing and resubmitted with his § 2241 petition. See ECF No. 1 at 21-67.  Accordingly, the second Mathews factor also weighs toward Petitioner.

### iii.   Government Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335.  Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens.]'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515).  Courts have also recognized that the detention of noncitizens during removal proceedings can serve the legitimate government purpose of preventing flight. Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008) (citing Demore, 538 U.S. at 528).  Thus, in some general way, the government has an interest in the detention of non-citizens held under § 1226(c).  However, "the

8

additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests.  At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal.  After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)).  In petitioner's case, the government's interest in further detaining him without a hearing to determine whether such detention is justified is minimal.

Administrative burden is a legally cognizable interest under Mathews.  But respondents' interest is further diminished by the low fiscal and administrative burdens associated with a bond hearing.  See D. L.C. v. Wofford, 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government.") (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

### C. Remedy

For reasons explained above in the Mathews analysis, the undersigned finds petitioner's request for a bond hearing to be the appropriate relief in this case.[4]  At that bond hearing, the government should bear the burden of demonstrating by clear and convincing evidence that petitioner presents a risk of flight or danger.  See Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases); Singh v. Chestnut,

---

[4]  The undersigned construes Count 3 in the petition, "Unconstitutional Punitive Detention," as sounding in substantive due process.  ECF No. 1 at 9.  While the procedural due process framework is sufficient for resolving this petition, the undersigned notes that substantive due process would also dictate that a bond hearing is necessary to test whether further prolonged detention is justified.  See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (recognizing need for bond hearings under substantive due process because "non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); see also Doe v. Beccera, 732 F. Supp. 3d 1071 (N.D. Cal. 2024) (applying five-factor test "regarding detention before criminal trial and civil commitment proceedings [to determine] whether continued detention" under 8 U.S.C. § 1226(c) "violates substantive due process[.]").

No. 1:26-cv-00127 DC SCR (HC), 2026 WL 766567 (E.D. Cal. March 18, 2026) (adopting Findings and Recommendations and granting a bond hearing).  This is the appropriate burden given the liberty interests at stake.  See Black, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing . . .by clear and convincing evidence.").

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.    Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED with respect to Count 2 (procedural due process).[5]

2.    Respondent be ordered to provide Petitioner with a constitutionally adequate bond hearing before an IJ at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of any order resolving the § 2241 petition.

3.    Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4.    If Petitioner is granted release on bond, respondent shall return all of Petitioner's documents and possessions at the time of release.

5.    Any order adopting these findings and recommendations include language that it does not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

6.    Judgement be entered in Petitioner's favor and this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period

---

[5]  In the interests of judicial economy, Count 4 (inadequate medical care) and Count 5 (unlawful transfer and violation of right to family association) are not addressed herein.

10

is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 23, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

11